## UNION TRANSFER CO. v. FINCH.

Middle Section.   December 23, 1932.

Petition for Certiorari denied by Supreme Court, July 19, 1933.

Bond, Fuqua & Bond, Richard Gleaves, and Charles P. Hatcher, all of Nashville, for plaintiff in error, Union Transfer Co.

Walker & Hooker, of Nashville, for defendant in error, Mary Finch.

CROWNOVER, J. This was an action for $25,000 damages for personal injuries sustained by the plaintiff, Mary Finch, when she was run down by a bus of the defendant company, a Tennessee corporation operating busses under chapter 58 of the Public Acts of 1929.

The declaration, as amended, contained four counts, as follows:

(1) That the defendant's driver negligently and wrongfully ran one of its busses at an unlawful and reckless rate of speed upon and against the plaintiff, without sounding an alarm and without putting down the brakes, or attempting to stop, thereby seriously and permanently injuring her.

(2) That it was the duty of defendant to regulate the speed of the bus, when meeting a street car that was standing still for passengers to alight, so that he would be able to stop the bus in the event any of the street car passengers started to cross Main street, and he negligently failed to do these things.

(3) That defendant failed to observe an ordinance of the city requiring a vehicle, except when passing a vehicle ahead, to keep as near the right curb as practicable.

(4) That defendant violated another ordinance of the city making it unlawful to operate a vehicle at a rate of speed in excess of thirty miles an hour within the corporate limits.

The defendant pleaded the general issue of not guilty.

The case was tried to the judge and a jury. At the close of plaintiff's evidence, and again at the conclusion of all the evidence, the

defendant made a motion for peremptory instructions, which motions were overruled and exceptions taken. The jury returned a verdict of $15,000 in favor of the plaintiff.

On motion for a new trial the trial judge suggested a remittitur of $7,000, but he overruled the motion on all other grounds. Plaintiff accepted the remittitur under protest, and judgment was entered accordingly.

The defendant, Union Transfer. Company, appealed in error to this court and has assigned seven errors, which are, in substance, as follows:

(1) There was no evidence to support the verdict and judgment, and defendant's motion for a directed verdict should have been sustained.

(2) The plaintiff was guilty of contributory negligence.·

(3) The court erred in refusing to charge defendant's special request as follows:

"I charge you, gentlemen of the jury, that if the plaintiff, as contended by the defendant came from behind the street car and walked or ran out into the street and against the side of the bus, without looking or in the exercise of ordinary case (care), and was injured as a direct and proximate cause or result there, then such acts on her part would be negligence which would bar her recovery, and your verdict should be for the defendant."

(4) The court erred in failing to set aside the verdict and in not holding the same was vitiated, because the jurors, in their deliberations, discussed the fact that defendant was insured against liability for accidents.

(5) The court erred in charging the jury with reference to the city ordinance requiring a vehicle to keep as near the right-hand curb as possible, because said ordinance is unreasonable and unconstitutional.

(6) The verdict was so excessive as to evince prejudice, passion, and caprice on the part of the jury, and the court erred in holding that the sum of $8,000, after a remittitur of $7,000, was not excessive, allowing it to stand.

The plaintiff did not appeal.

The material facts in this case are:

The accident, which is the basis of this suit, occurred on Main street (or Gallatin avenue) at its intersection with Eighth street in the city of Nashville. Main street at this point is forty feet wide and extends generally east and west. Eighth street crosses Main street and extends generally north and south, but has an offset at its intersection; the south side of Main street being about a hundred feet west of its intersection on the north side. There is one street car track located on Main street, which is nearer the south side of the street than the north; the distance from the south rail of the

track to the south curb being twelve feet, and the distance from the north rail to the north curb being twenty-two feet.

Main street at this point is straight, and any one standing where the street car was stopped, looking east (the direction from which the bus came), could see for at least two city blocks, and looking west could see for one-half a city block. The street is slightly upgrade in each direction from this point.

Mary Finch, a colored woman, of the age of thirty-eight, on Saturday afternoon, September 21, 1929, at about four o'clock, boarded at the transfer station a Gallatin-McFerrin street car for the purpose of going to see her uncle, who lived on Main street, on the north side of the street, just east of its intersection with Eighth street.

The street car, when it reached Eighth street, going east, stopped just east of the east curb of Eighth street. Mary Finch, who was seated in the colored section at the rear of the car, alighted from the rear door and walked over to the sidewalk on the south side of the street. After looking to see if anything was approaching from the west, on the south side of the street, and seeing nothing, she started across the street around the rear end of the street car, which was still standing there.

The Union Transfer Company's passenger bus, traveling from Springfield, Tennessee, to Nashville, was approaching from the east, going west on Main street.

Plaintiff's evidence is, that when she had reached the north rail of the track she looked east, saw nothing, and took about one step north into the street, when she was struck by the bus; that the bus was being operated at the rate of thirty-five or forty miles an hour; that after striking her it ran about fifty yards before it was brought to a stop; that there were no cars parked along the north side of Main street and no cars traveling in front of the bus; that when she crossed the north rail of the track the bus was forty or fifty yards away.

Defendant's theory of the accident is, that the bus was traveling at the rate of about fifteen miles an hour; that the driver had just checked his speed as he approached Eighth street because he saw an automobile that appeared to be coming out of Eighth street; that when the street car stopped the bus was about ten feet east of it; that when the driver first saw the plaintiff she was on his left side about on a line with his seat, which is about five feet behind the bumper; that the left side of the bus, as it passed the street car, was about ten feet away; that the plaintiff came out from behind the street car running, or in a fast walk, and had her head turned back to the left, as if talking to some one behind her, or on the street car, and ran into the left side of the bus; that the bus traveled about ten or fifteen feet and stopped; that her body was lying a short distance behind the bus when it stopped, with her head two or three feet north of the north rail of the track with her body extending at an angle to-

ward the north side of Main street; that she had struck the bus at the second window behind the driver's seat, which is eleven feet behind the bumper; that after the bus stopped some of her hair and a piece of her pink hat were found sticking to the side of the bus at this point.

Plaintiff's evidence in rebuttal was that the plaintiff was struck by the front wheel of the bus and thrown against the side of it.

1 and 2. The first two assignments of error, that there was no evidence to support the verdict and judgment and .defendant's motion for a directed verdict should have been sustained, and that the plaintiff was guilty of contributory negligence, are not well made.

As shown by the foregoing statement, the theories of the plaintiff and defendant as to. the cause of the accident conflict in every detail —the speed of the bus, whether it was traveling as close to the curb as possible or in the center of the street, whether warning was given plaintiff of the approach of the bus, whether plaintiff was struck by the bus or the plaintiff ran into the bus. This conflicting evidence on every point necessary to establish negligence on the part of the defendant was properly submitted to the jury, and it found in favor of the plaintiff. The jury found that the negligence of the agent of defendant was the proximate cause of the accident, and that the plaintiff was not guilty of contributory negligence; hence the first and second assignments must be overruled.

There was evidence to support the jury's findings. One of defendant's witnesses testified that the bus was being driven very slowly, was ten feet east of the street car when the street car stopped; that there was a space of ten feet between the side of the bus and the side of the street car; that Mary Finch, the plaintiff, got off of the street car, went around the rear of it, crossed the intervening space of ten feet between the street car and the bus, and struck the bus at a point about eleven feet behind the bumper, while the bus was traveling twenty-one feet plus the length of the street car.

Another witness testified that the bus was eight or ten feet north of the side of the street car and running close to the north curb, at the rate of twenty miles an hour, when the plaintiff ran into the side of it.

The driver of the bus testified that he was driving at the rate of fifteen miles an hour; that the front wheels of the bus were about even with the front of the street car when the street car came to a standstill; that when he first saw the plaintiff from the window at the side of the driver's seat she was running towards the bus; that she struck the bus at the second window behind the driver, which is about five feet behind the driver's seat; that the side of the bus was about ten feet north of the side of the street car; that from the time the street car stopped until the accident he had traveled twenty feet; that he traveled twenty feet while the plaintiff got off of the street car, crossed about six feet of track and ten feet of

space between the street car and the bus. On cross-examination he swore that when the street car stopped the front of his bus was in line with the back of the street car; that the side of the bus was ten feet north of the side of the street car; that he traveled eleven feet while plaintiff got off of the street car, crossed the six-foot track and the ten-foot space between street car and bus, and struck the bus at a point eleven feet from the bumper.

Another witness testified that just as the motor of the bus passed the front end of the street car, the street car stopped; that the side of the bus was eight or ten feet from the side of the street car; that the front of the bus was even with the back of the street car when plaintiff got off of the street car; that she crossed the track and the ten-foot space while the bus was traveling eleven feet.

According to plaintiff's testimony, she had not yet reached the center line of the street when she was struck by the bus. The road is forty feet wide, between the track and the south curb is twelve feet, the track about six feet, and she had walked a foot or possibly two feet north of the north rail of the track when she was struck. She says she looked east and saw nothing. This is contradicted by defendant's witnesses.

3. Defendant's third assignment is that the court erred in refusing to charge its special request, which, it contends, states its theory of the case. This request, in effect, asks the court to charge that plaintiff cannot recover if she was guilty of contributory negligence. The court, in his regular charge, had explained to the jury that the plaintiff could not recover if she was guilty of contributory negligence and charged the law correctly as to the duties of. pedestrians crossing streets, etc.; therefore we do not think the defendant was prejudiced by the court's refusal to charge its request, and this assignment is overruled.

It is insisted that this request contained the defendant's theory which had not been charged. It is true that the court should charge the theory of the defendant, when requested, if he had already charged the plaintiff's theory, but the court did not charge the plaintiff's theory, hence it did not err in refusing to charge defendant's theory. Railroad v. Hatch, 116 Tenn., 580, 94 S. W., 671.

The theory of defendant, raised by its pleading, was that it was not guilty of negligence and the plaintiff was guilty of contributory negligence. The court had already charged on both, so it was not error for him to refuse this request.

Furthermore, this request does not state the law correctly. If the trial judge had charged this special request he would have been in error, for the effect of such charge would have been to instruct the jury that the plaintiff was guilty of negligence, as a matter of law, if she failed to look, irrespective of whether she had passed the center line of the street. She had a right to presume that the bus was being operated and driven as near the curb as reasonably pos-

sible, in compliance with the city ordinance. She had a right to presume the bus driver would obey the law, 42 C. J., 884, 901 and 943, sections 584, 607 and 665; Auburn Nashville Co. v. Graham, 13 Tenn. App., 444; Elmore v. Thompson, 14 Tenn. App., 80; Knoxville Ry. & Light Co. v. Roth, 2 Tenn. Civ. App. (2 Higgins), 389; and under such circumstances the question of whether she was guilty of contributory negligence was one for the jury.

The request to charge that plaintiff must look both ways, and if she failed, she was guilty of negligence as a matter of law, is erroneous. She was required to exercise ordinary care only, and it was for the jury not the court to convict her of negligence. Driver v. Arn and Card, 6 Tenn. Civ. App. (6 Higgins), 582; McNabb v. Gannaway, 3 Tenn. Civ. App. (3 Higgins), 78.

4. Defendant's fourth assignment complains of the court's refusal to set aside the verdict, on the hearing of the motion for a new trial, because one of the jurors stated to the jury, during its deliberation, that the bus company had liability insurance. This assignment is not well made. By the Public Acts of 1929, chapter 58, section 3, the bus company was required to file with the Railroad and Public Utilities Commission of the state an indemnity bond or a policy of liability insurance. The fact that some of the jurors knew what the law requires of bus companies, is not reversible error. We so held in an opinion by Presiding Judge Faw in the case of Annie Marshall v. North Branch Transfer Co., Robertson Law, filed at Nashville on October 1, 1932, which is in part as follows:

"In view of the foregoing public statutes, and the maxim that 'every one is supposed to know the law' (Jones on Evidence, 2 Ed., sec. 109), the jury could rightfully assume that the defendant had liability insurance, or its equivalent in some form of indemnity undertaking approved by the Railroad & Public Utilities Commission; for the law does not presume disobedience to its mandates, but, in the absence of evidence to the contrary, it will be presumed that the defendant—a common carrier—was conducting its business *lawfully*, under the authority of a certificate from the Railroad and Public Utilities Commission. Cincinnati, etc., Railway Co. v. Rankin, 241 U. S., 319, 327, 36 S. Ct., 555, 60 L. Ed., 1022, 1026, L. R. A., 1917A, 265, 269; N. Y. Cent., etc., Railroad Co. v. Beaham, 242 U. S., 148, 151, 37 S. Ct., 43, 61 L. Ed., 210, 216; Southern Pacific Co. v. Stewart, 245 U. S., 359, 362, 38 S. Ct., 130, 62 L. Ed., 345, 347; L. & N. R. Co. v. Hobbs, 136 Tenn., 512, 519, 190 S. W., 461; Southern Railway Co. v. Lewis & Adcock Co., 139 Tenn., 37, 43, 201 S. W. 131, L. R. A., 1918C, 976; Carolina Spruce Co. v. Black Mountain R. Co., 139 Tenn. 137, 158, 201 S. W. 154. This is an application of an ancient maxim. In Broom's Legal Maxims (8 Ed.), pp. 943-944, it is said: 'Where acts are of an official nature, *or require the concurrence of official persons*, a presumption arises in favor of their due execution. In these cases the ordinary rule is, Omnia praesumuntur

rite et solenniter esse acta donec probetur in contrarium—everything is presumed to be rightly and duly performed until the contrary is shown.' (The italics is ours.)

"It could not be reversible error for a juror to state in the presence of his fellow jurors a fact which each member of the jury was presumed to know, since it appeared from competent and undisputed evidence admitted by the court that the defendant was a common carrier of passengers for compensation on the public highway between the town of Springfield in Robertson County and the town of Clarksville in Montgomery County in this State. The defendant's fourth and fifth assignments of error are overruled." This decision was reversed by the Supreme Court on other grounds, 59 S. W. (2d), 520.

Five of the jurymen testified that they heard one juror say that the bus company had insurance; seven had not heard it mentioned. The five who heard it mentioned testified that they did not know whether it was true or not, and that they did not consider it in arriving at their verdict; that they decided the case on the law and the evidence. The seven who heard nothing of it testified that they did not take into consideration anything about insurance in making up their verdict.

This assignment must be overruled.

5. Defendant's fifth assignment of error is that the court erred in charging the jury that if the defendant violated the city ordinance requiring a vehicle to keep as near the right-hand curb as possible, and this act was the proximate cause of the accident, she should recover, because said ordinance is unreasonable and unconstitutional.

The defendant made no effort to show that the ordinance was unreasonable.

"Where it is shown that a city has the power to pass an ordinance, the burden is then on the party attacking the ordinance to show its invalidity, and to establish the facts. (43 C. J., 201-2.) The burden of proof to show the unreasonableness of a municipal ordinance is on the person asserting it, unless its unreasonableness is apparent on its face. 43 C. J., 311-312, sec. 323; Hines v. Partridge, 144 Tenn., 210, 231, 231 S. W., 16.

"The unreasonableness of an ordinance, or want of necessity as a police regulation, must be clear, manifest and undoubted. N., C. & St. L. Ry. v. White, 158 Tenn., 413, 15 S. W. (2d), 1." N., C. & St. L. Ry. Co. v. Faris, Hamilton Law, Opinion of this Court filed at Knoxville, July 2, 1932.

The defendant complains that the judge in submitting this question to the jury used the word "possible" literally. The trial judge in his charge simply stated the terms of the ordinance. Defendant made no requests as to this charge.

We held that this ordinance was reasonable and valid in opinions in the cases of Elmore v. Thompson, 14 Tenn. App., 78, Davidson

Law, filed July 2, 1931; Phillips-Buttorff Mfg. Co. v. A. S. Mc-Alexander, Adm'r, filed August, 1932; Power Packing Co. v. Borum, 8 Tenn. App., 162; Opinion by Special Judge R. H. Crockett in Merchants' Delivery Co. v. O. P. Pile, filed in 1932 at Nashville, Davidson County Law.

6. We are of the opinion that the verdict, after the trial judge's remittitur was entered, is not excessive. The plaintiff was a colored woman, a widow, of the age of thirty-eight. She was in good health and was employed as a cook and nurse, for which she received nine dollars a week. She sustained a serious fracture of the left side of the skull; the bone was laid open to the brain. She now has a deep scar there about four inches long and one and one-quarter inches wide, and in the scar can be seen the pulsations of her brain, the bones of the skull covering the brain there having had to be removed. An eminent physician, who examined her, testified that the brain is exposed on account of the removal of parts of the skull; "that where such a large defect has been removed as in her instance, that there are two chances always of complications that might arise, anywhere from a few months to several years, as a rule you have them with fits, epilepsy. A portion of the dura of the brain may form a hernia, it may form a rupture like a rupture of the inguinal canal, or down at the umbilicus, which requires an extensive operation, and an operation which at all times is not a success at all;" that if such a condition develop, either epilepsy or hernia, there is nothing that medicial science can do. She suffers with chronic headaches, dizziness, nervousness, and insomnia. The physician stated that she will continue to suffer with same, and that nothing can be done to relieve such condition. He testified that she is permanently disabled, and her disability is about forty to fifty per cent. She also received a cut on her cheek and one on her lip, and her back was wrenched. The sight of one eye is much impaired; there being an impairment of about twenty-five per cent. The only work that she is qualified to do is cooking and nursing. The doctor stated that she will never be able to do manual labor; that she must not become over-heated; and that she must, at intervals, all her life, consult a doctor. In view of the fact that the plaintiff is a widow, a colored woman, and of the age of thirty-eight; that she has received serious injuries which may become more serious; and that she is incapacitated to support herself in the only work she had the ability to do, we do not think a judgment of $8,000 is excessive. We think she is entitled to a large verdict for such injuries, but as her earning capacity is limited, we think the trial judge was right in ordering the remittitur. This assignment of error must be overruled.

It results that all the assignments of error must be overruled, and the judgment of the lower court affirmed. A judgment will be entered in this court in favor of Mary Finch and against the Union Transfer Company for the sum of $8,000, with interest from Oc-

302

tober 28, 1931, to the present. The cost of the cause including the cost of the appeal is adjudged against the defendant and the surety on its appeal bond.

Faw, P. J., and DeWitt, J., concur.